UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,                          Crim. No. 15-260(7) (PAM/TNL)

                          Plaintiff,

v.                                                 **MEMORANDUM AND ORDER**

Jason Allen Jackson,

                          Defendant.

_____

This matter is before the Court on Defendant's Motion to Vacate under 28 U.S.C. § 2255 and the Government's Motion to Dismiss.  For the following reasons, the Motion to Dismiss is granted, and the Motion to Vacate is dismissed.

**BACKGROUND**

In July 2016, a jury convicted Defendant Jason Allen Jackson for his role in a large-scale conspiracy to distribute methamphetamine.  (Docket No. 605.)  The evidence at trial established that Jackson was a high-level distributor of methamphetamine for his co-Defendant Jesse Garcia, the leader of the conspiracy.  At the time of the offense conduct giving rise to his conviction, Jackson was also on supervision for another federal drug offense.  Indeed, Jackson had finished serving a prison sentence for a violation of the terms of his federal supervision less than two months before law enforcement began investigating his association with Jesse Garcia's drug-distribution activities.  The Court ultimately sentenced Jackson to 330 months' imprisonment, a downward variance from the otherwise applicable sentencing guidelines range.  (Docket No. 801.)

Shortly after sentencing, Jackson filed a pro se motion to vacate under 28 U.S.C. § 2255.  (Docket No. 815.)  In the 12-page memorandum filed in support of the motion, Jackson argued that his attorney rendered ineffective assistance by, among other things, failing to sufficiently challenge search warrants and wiretaps, failing to secure a severance from co-Defendants who appeared pro se and in jail clothing, and failing to move to sever the conspiracy count (Count 1) from the possession-with-intent-to-distribute count (Count 3).  (Docket No. 838.)  Meanwhile, however, Jackson's attorney timely filed an appeal of his conviction and sentence.  (Docket No. 818.)  This Court therefore dismissed the motion to vacate without prejudice as premature.  (Docket No. 860.)

Jackson's appeal argued that the Court erred in several ways: by denying his motion to suppress wiretap evidence, refusing to sever Count 1 from Count 3, allowing the admission of his prior convictions under Rule 404(b), and in fashioning his sentence. Jackson's appeal also argued that there was insufficient evidence to convict him.  The Eighth Circuit Court of Appeals affirmed his conviction and sentence in all respects. United States v. Escobar, 909 F.3d 228 (8th Cir. 2018).  Jackson sought certiorari from the United States Supreme Court, but his petition was denied on June 24, 2019.

In April 2020, Jackson sought an extension of the one-year limitations period in 28 U.S.C. § 2255(f)(1) for filing motions to vacate.  (Docket No. 984.)  The Court denied his request without prejudice, noting that it lacked jurisdiction to toll the statutory limitations period before Jackson filed a motion to vacate.  (Docket No. 985.)  Jackson sought reconsideration (Docket No. 988) and appealed the denial of his extension request (Docket No. 1018).  The Court denied the request for reconsideration without prejudice, informing

Jackson that he could instruct the Court to construe the allegations in his motion for extension of time as a timely filed § 2255 motion.  (Docket No. 1028.)  Jackson did not so instruct, and his appeal of the extension issue remains pending.

In January 2021, Jackson sought the appointment of counsel to assist him in filing a motion for compassionate release.  (Docket No. 1101.)  The Court granted that request, and counsel ultimately filed a motion for compassionate release in February 2021.  (Docket No. 1107.)  The Court denied Jackson's request for compassionate release in March 2021 (Docket No. 1128); Jackson did not appeal that denial.

After receiving communications from Jackson's mother regarding the difficulties Jackson was experiencing in filing a motion to vacate, the Court appointed counsel to assist him in that endeavor.  (Docket No. 1140.)  On July 27, 2021, counsel filed the instant Motion to Vacate.  (Docket No. 1173.)  The Government responded by moving to dismiss the Motion, contending that it was untimely filed.  (Docket No. 1187.)  In the alternative, the Government argues that the Court should stay a ruling on the Motion pending the outcome of Jackson's appeal.  Jackson filed an opposition memorandum (Docket No. 1193) and with the Court's permission the Government filed a surreply (Docket No. 1198). The matter is now fully submitted.

Jackson's Motion raises five claims for ineffective assistance of counsel.  He asserts that counsel failed to: (1) challenge a wiretap as he requested, (2) share discovery with him, (3) renew a request to sever Jackson's case from his co-Defendants, and (4) investigate defenses to the counts of conviction.  He also claims that his attorney unreasonably advised him not to testify.

**DISCUSSION**

> A prisoner in custody under [federal] sentence . . . claiming the right to be
> released upon the ground that the sentence was imposed in violation of the
> Constitution or laws of the United States, or that the court was without
> jurisdiction to impose such sentence . . . or is otherwise subject to collateral
> attack, may move the court which imposed the sentence to vacate, set aside
> or correct the sentence.

28 U.S.C. § 2255(a).  Relief under § 2255 "is reserved for transgressions of constitutional

rights and for a narrow range of injuries that could not have been raised on direct appeal

and, if uncorrected, would result in a complete miscarriage of justice." United States v.

Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996).  Thus, not all claims of error in a conviction or

sentence are cognizable in a § 2255 proceeding. Sun Bear v. United States, 644 F.3d 700,

704 (8th Cir. 2011) (en banc).  The petitioner bears the burden to establish that his

conviction or sentence violated either the Constitution or federal law. United States v. Hill,

215 F. Supp. 3d 823, 826 (D. Minn. 2016) (Kyle, J.).

Although § 2255 requires a Court to hold an evidentiary hearing "[u]nless the

motion and the files and records of the case conclusively show that the prisoner is entitled

to no relief," 28 U.S.C. § 2255(b), a "petition can be dismissed without a hearing if (1) the

petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the

allegations cannot be accepted as true because they are contradicted by the record,

inherently incredible, or conclusions rather than statements of fact." Engelen v. United

States, 68 F.3d 238, 240 (8th Cir. 1995).  Because Jackson's claims are clearly time-barred

and are in any event without merit, the Court declines to hold an evidentiary hearing.

4

**A.      Timeliness**

As relevant here, the statute provides that any motion to vacate a federal conviction must be filed within one year of "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). Jackson does not dispute that his Motion is untimely under the statute, because his conviction became final on June 24, 2019, and he did not file this Motion until July 27, 2021. Jackson asks the Court to equitably toll the limitations period and allow his Motion to proceed.

Equitable tolling is appropriate only if Jackson establishes "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (quotation omitted). Jackson contends that his confinement in a Special Housing Unit, with very limited access to legal resources, his extended stay at the Federal Transfer Center, where he was unable to access his legal materials, and the strictures of the global pandemic, amount to "extraordinary circumstance[s]" that prevented him from timely filing his Motion.

Jackson was assigned to the Special Housing Unit of the Federal Correctional Institution in Greenville, Illinois, from July 10, 2019, until he was sent to the Federal Transfer Center on March 4, 2020, in anticipation of his transfer to a facility in Kansas. The pandemic struck shortly after Jackson's arrival at the Transfer Center, and he remained there under 23.5-hours-per-day lockdown for several months. The record does not reflect the date of his arrival at his new facility, but he was there in September 2020, when his

mother wrote to the Court that the new facility was in Covid lockdown and Jackson could not access any legal resources. (Docket No. 1018.)

Assignment to a Special Housing Unit that severely restricts inmates' access to legal resources does not by itself warrant equitable tolling. See Muhammad v. United States, 735 F.3d 812, 815 (8th Cir. 2013) (stating that "equitable tolling [i]s not proper when an unrepresented prisoner claimed lack of legal resources"). Indeed, like the prisoner in Muhammad, Jackson "does not claim that he was prohibited from contacting the court or was denied any mail sent from the court" or that he lacked "access to paper and writing implements." Id. He frequently communicated with the Court during this period, demonstrating that he had sufficient access to paper and the mail system to file a motion to vacate. Although Jackson's confinement at the Transfer Center was even more restrictive, that transfer did not occur until March 2020, nearly nine months into the 12-month limitations period. This transfer does not explain Jackson's failure to file a motion during the time before the transfer.

Jackson's ostensible inability to file a timely § 2255 motion is even more mystifying in light of his filing of a premature, thoroughly briefed, § 2255 motion shortly after his sentencing. The premature motion raises many of the same claims Jackson raises here and could have been filed at any time after Jackson's conviction became final. His decision not to re-submit this motion is not an external circumstance that prevented him from filing a timely motion, and indeed shows that he did not "pursu[e] his rights diligently." Holland, 560 U.S. at 649.

6

Equitable tolling is not warranted here.  The Motion can be denied on this basis alone.

**B.    Ineffective Assistance of Counsel**

Even if timely, however, Jackson's claims fail on the merits.  To prevail on a claim that counsel rendered ineffective assistance, Jackson must establish both that his attorney's performance was deficient and that he was prejudiced by the deficient performance. Strickland v. Washington, 466 U.S. 668, 689 (1984).  The Court presumes that the attorney provided effective representation, and "will not second-guess strategic decisions or exploit the benefits of hindsight." Henderson v. Norris, 118 F.3d 1283, 1287 (8th Cir. 1997). Indeed, the Court's "scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689.  To establish that counsel performed deficiently within the meaning of Strickland, Jackson must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Anderson v. United States, 393 F.3d 749, 753 (8th Cir. 2005).

To demonstrate prejudice, Jackson must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  If he cannot establish prejudice, the Court need not address the reasonableness of the representation, because the failure to establish prejudice is dispositive of a § 2255 claim of ineffective assistance. Apfel, 97 F.3d at 1076.

1.      **Wiretap**

In pretrial proceedings, Jackson's attorney sought to suppress the wiretap evidence against Jackson, arguing that law enforcement had not established the statutory prerequisite of necessity. (Docket No. 318.) Jackson now argues that there were other, better arguments as to why the wiretap evidence should have been suppressed, and that it was ineffective for counsel to have failed to raise those other grounds for suppression.

"When [] counsel competently asserts some claims on a defendant's behalf, it is difficult to sustain a[n] ineffective assistance claim based on allegations that counsel was deficient for failing to assert some other claims." Link v. Luebbers, 469 F.3d 1197, 1205 (8th Cir. 2006) (citations omitted). Indeed, "counsel will not be held to be ineffective for failure to raise every conceivable issue." Id. However, the "[f]ailure to file a meritorious motion to suppress can constitute ineffective assistance of counsel if it resulted in prejudice." Eastin v. Hobbs, 688 F.3d 911, 915 (8th Cir. 2012).

Jackson argues that counsel should have challenged the facts in the wiretap application because those facts did not establish that there was probable cause to intercept his communications, as the wiretap statute requires. He notes that prior wiretaps did not reveal any communications between himself and other members of the conspiracy. But as he also points out, he was in federal prison until June 19, 2015, and one hopes that he did not begin to distribute illegal drugs immediately on his release from incarceration. Thus, it is not particularly surprising that previous wiretaps did not include any evidence regarding Jackson's involvement.

Jackson also argues that counsel should have argued that the wiretap application did not contain a full and complete statement of the facts, as the statute requires. The application contained information regarding an arrestee's purchase of methamphetamine from Jackson's girlfriend, but failed to disclose that this purchase occurred when Jackson was still in prison. And he contends that counsel should have requested a <u>Franks</u> hearing on the wiretap application, to inquire as to whether law enforcement intentionally concealed that Jackson was in prison during much of the charged conspiracy.

But even if counsel should have made these arguments, and even if his failure to do so was somehow egregiously deficient, as <u>Strickland</u> requires, there is no prejudice to Jackson from the wiretap evidence here. At the time of his arrest, he was subject to a warrant for violation of the terms of his supervised release on the prior federal conviction. In a phone call from jail after his apprehension, he told his parents that his "stuff" was in the trunk of the car he was driving when he fled law enforcement. Police then searched the car and found a significant quantity of methamphetamine in the car's trunk. Even without the wiretap evidence, there is a high probability that Jackson would have been apprehended with the methamphetamine, and that law enforcement would have discovered Jackson's relationship with Garcia. The evidence of Jackson's guilt was overwhelming and would have been discovered without the wiretaps. Jackson cannot establish that he was prejudiced by his counsel's alleged failures, and this claim fails.

## 2. Discovery

Jackson next argues that his counsel was ineffective for failing to provide Jackson with all of the discovery in the case. But counsel explained that he provided Jackson with

9

all discovery relevant to him; in a case with 13 defendants, there will inevitably be significant discovery that is not relevant to every defendant. As Jackson argues, he was entitled to review any discovery that the Government would use against him. There is no allegation or indication in the record that Jackson's attorney did not provide him with the evidence the Government used against him. Counsel is not required to provide all discovery in a case such as this. This claim fails.

**3. Severance**

Next, Jackson contends that his attorney should have sought to sever his case from co-Defendant Jesse Garcia's, because Garcia did not claim to be innocent but rather to be beyond the reach of federal drug laws, invoking what is known as the "sovereign citizen" defense. Trial counsel did in fact file a motion for severance early in the case, which was denied without prejudice. (Docket No. 316.) Jackson's objection here is that counsel did not renew that motion later, when he contends that it became apparent that Jackson and Garcia would have antagonistic defenses. Jackson also argues that he was prejudiced by his counsel's failure to secure a severance because Garcia insisted on wearing his jail jumpsuit to trial, which prejudiced him and the other Defendants.

The decision not to renew a motion to sever is a reasonable trial strategy under the circumstances of this case. See Strickland, 466 U.S. at 689 (noting the "strong presumption" that counsel's actions are reasonable trial strategy). The failure to renew the motion was not an error "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Anderson, 393 F.3d at 753.

But even if counsel grievously erred by failing to renew the severance motion, as discussed above, the evidence against Jackson in this matter was overwhelming.   He suffered no prejudice from any alleged failure, and the Motion fails on this point.

### 4.    Investigation

Jackson argues that his attorney rendered constitutionally deficient performance by failing to investigate all potential defenses.  Specifically, Jackson contends that his attorney should have presented a defense that Jackson's girlfriend, and not Jackson, was a part of the Garcia conspiracy.   Jackson further contends that counsel should have secured a fingerprint analysis of the methamphetamine found in the car Jackson was driving to try to establish that it was not Jackson's, because the vehicle was rented to someone other than Jackson, and there was another individual in the car when law enforcement apprehended Jackson.

Given Jackson's recorded phone-call statements that his "stuff" was in the trunk of the car, and law enforcement's subsequent discovery of methamphetamine in the trunk, his current contention that the methamphetamine might have belonged to someone else is utterly without merit.  And the supposed defense that Jackson's girlfriend was really the person involved in the conspiracy to distribute methamphetamine is speculative at best and is belied by Jackson's possession of significant quantities of methamphetamine.  It was not ineffective for counsel to decline to investigate these meritless defenses.

### 5.    Jackson's Testimony

Finally, Jackson contends that it was ineffective assistance for counsel to advise him not to testify in his own defense, particularly after the Court allowed the Government to

introduce evidence of Jackson's prior drug convictions.  Jackson contends that there was "little to lose" from having him testify once the Court determined that the jury could hear about the prior convictions.  (Docket No. 1173 at 40.)  But that Jackson may have had alternative explanations for some of the Government's evidence does not mean that counsel should have allowed or encouraged him to testify.  There are many reasons an attorney may recommend that his client not testify, not the least of which is the possibility that the client will incriminate himself under cross-examination.  Further, the fact that the jury heard in general of Jackson's prior convictions does not vitiate the harm that might have occurred had Jackson been cross-examined about the specifics of those previous convictions.  Counsel's advice falls squarely in the category of sound trial strategy.  Jackson has failed to establish either deficient performance or prejudice, and his claims that his attorney was ineffective are without merit.

## C.      Certificate of Appealability

Jackson may not appeal this Court's ruling on his Motion to Vacate without a certificate of appealability.  28 U.S.C. § 2253(c)(1)(B).  But such a certificate requires Jackson to make "a substantial showing of the denial of a constitutional right." Id. § 2253(c)(2); see also Kramer v. Kemna, 21 F.3d 305, 307 (8th Cir. 1994) ("Good faith and lack of frivolousness, without more, do not serve as sufficient bases for issuance of a certificate under 28 U.S.C. § 2253.").  Jackson must establish that the issues he raises are "debatable among reasonable jurists," that different courts "could resolve the issues differently," or that the issues otherwise "deserve further proceedings." Cox v. Norris, 133

F.3d 565, 569 (8th Cir. 1997).  Jackson has not met this high standard, and no certificate of appealability will issue.

**CONCLUSION**

Jackson's Motion is untimely and must be dismissed as such.  Even if timely, Jackson has failed to establish that his trial attorney rendered ineffective assistance. Accordingly, **IT IS HEREBY ORDERED that**:

1.  The Government's Motion to Dismiss (Docket No. 1187) is **GRANTED**; and

2.  Defendant's Motion to Vacate (Docket No. 1201) is **DISMISSED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: ___October 1, 2021_____

  *s/Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge

13